IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA

WAYCROSS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 CASE |
| | ) | No. 24-50027 |
| SHIRLEY RENDRA JONES, | ) | |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| SHIRLEY RENDRA JONES, | ) | ADVERSARY |
| | ) | PROCEEDING |
| Plaintiff, | ) | No. 24-05004 |
| | ) | |
| v. | ) | |
| | ) | |
| CARRINGTON MORTGAGE | ) | |
| SERVICES, LLC, AS SERVICER FOR | ) | |
| WELLS FARGO BANK, N.A., AS | ) | |
| TRUSTEE FOR CARRINGTON | ) | |
| MORTGAGE LOAN TRUST, SERIES | ) | |
| 2006-NCJ ASSET BACKED PASS- | ) | |
| THROUGH CERTIFICATES, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment (A.P. ECF No. 56)[1]

(the "Motion"). Plaintiff filed a Response (A.P. ECF No. 66) (the "Response") opposing the

Motion, and Defendant filed a Reply (A.P. ECF No. 67) (the "Reply").

---

[1] Docket citations beginning with "A.P." refer to the docket in the present adversary proceeding, No. 24-05004. All other citations to the docket refer to the docket in the underlying bankruptcy case, No. 24-50027.

AO 72A
(Rev. 8/82)

This proceeding concerns the foreclosure sale of Plaintiff's residence located at 1505 Woodvalley Dr., Douglas, GA 31533 (the "Property") that took place on January 2, 2024. As discussed below, Plaintiff alleges that the foreclosure was wrongful due to alleged defects in pre-foreclosure notices and the fact that the foreclosure allegedly took place while a loss mitigation application was pending. She also alleges she suffered damages due to such wrongful foreclosure. Because Defendant has shown that Plaintiff cannot present evidence in support of certain essential elements of her claims on which Plaintiff bears the burden of proof at trial, and because Plaintiff has failed to establish that a genuine issue of material fact exists, the Motion will be granted, and summary judgment will be entered in Defendant's favor.

**JURISDICTION**

The Court will address first its jurisdiction over this proceeding. It is undisputed that the Court has subject matter jurisdiction over this matter because it was filed under 11 U.S.C. § 1334, as it "ar[ose] in or [was] related to" Plaintiff's pending bankruptcy case. See also 28 U.S.C. § 157. Since the filing of this proceeding, however, Plaintiff's underlying bankruptcy case has been dismissed.[2] (ECF No. 62.)

---

[2] Plaintiff's chapter 13 bankruptcy case was filed on January 16, 2024, and dismissed on January 15, 2026. (ECF Nos. 1, 62.)

AO 72A
(Rev. 8/82)

2

Generally, a pending adversary proceeding will be dismissed without prejudice following the dismissal of a main bankruptcy case, but this is not automatic. A court may exercise its discretion to retain jurisdiction over an adversary proceeding even though the main case has been dismissed if it determines that certain factors support such retention. Fidelity & Deposit Co. of Md. v. Morris (In re Morris), 950 F.2d 1531, 1534 (11th Cir. 1992). Courts consider judicial economy; fairness and convenience to the litigants; and the degree of difficulty of the legal issues involved when determining whether to retain jurisdiction over an adversary proceeding. Id. at 1535 (approving retention of jurisdiction where adversary proceeding had been pending for four years, was ready for trial, and dismissal would not serve judicial economy interests and would not be fair to the parties who would have to start over in state or non-bankruptcy federal court); see also German Am. Cap. Corp. v. Oxley Dev. Co., LLC (In re Oxley Dev. Co., LLC), 493 B.R. 275, 287-89 (Bankr. N.D. Ga. 2013) (retaining jurisdiction where bankruptcy court had expended great judicial resources over discovery disputes, dispositive motion was pending, and starting over would be unfair to parties, and contested foreclosure was not a complex issue that court could not decide).

The Court held a hearing on January 28, 2026, to give the parties an opportunity to show cause why this case should not be dismissed in light of the dismissal of Plaintiff's main bankruptcy case. Both parties opposed dismissal and requested that the Court retain

AO 72A
(Rev. 8/82)

jurisdiction over this proceeding. The Court agrees. Each of the relevant factors supports retention of jurisdiction. This case is far advanced; discovery is complete; and a dispositive motion is fully briefed and ripe for decision. Dismissal would be unfair and burdensome for the parties who have already put time and resources into this litigation, and dismissal at this advanced stage would not serve the interest of judicial economy. This case concerns a straightforward claim of wrongful foreclosure under Georgia law, which this Court is equipped to handle. Accordingly, the Court will retain jurisdiction over this adversary proceeding.

## FACTS AND PROCEDURAL HISTORY

### A. The Undisputed Facts[3]

These facts are supported by the affidavit of Brian Cox, a foreclosure services manager employed by Defendant who is familiar with the business records of Defendant and has personal knowledge of the facts he avers to; the exhibits to Mr. Cox's affidavit;

---

[3] The Court draws these facts from the Defendant's Statement of Undisputed Facts (A.P. ECF No. 55). Plaintiff failed to respond to Defendant's Statement of Undisputed Facts; failed to file her own statement; and failed to provide any record evidence refuting Defendant's Statement of Undisputed Facts. Accordingly, the Court treats Defendant's Statement of Undisputed Facts, to the extent they are properly supported by the record, as undisputed for purposes of the Motion. See Fed. R. Civ. P. 56(e)(2) (courts may consider facts undisputed if the nonmoving party fails to properly address the moving party's property supported assertion of fact).

AO 72A
(Rev. 8/82)

Plaintiff's responses to two sets of requests for admission from Defendant; and certain certified mailing receipts.

Plaintiff executed a promissory note in favor of New Century Mortgage Corporation in the amount of $85,000.00 (the "Loan") to purchase the subject Property. (A.P. ECF No. 55 at ¶ 1.) The Loan was secured by a security deed signed by Plaintiff and recorded on May 30, 2006, in Coffee County, Georgia. (Id. at ¶ 2.) Defendant began servicing the Loan for Wells Fargo Bank, N.A., as Trustee for Carrington Mortgage Loan Trust, Series 2006-NCJ Asset Backed Pass-Through Certificates, in July 2007. (Id. at ¶ 3.)

Plaintiff modified the Loan five times between May 2008 and April 2022, eventually defaulting on each of these modifications. (Id. at ¶¶ 4-5.) Plaintiff defaulted on the latest loan modification (agreed to in April 2022) by failing to make her monthly payment for June 1, 2022, and all subsequent payments. (Id. at ¶ 6.) This default triggered the foreclosure sale that is the subject of this litigation. (Id.) At no point after this default through the foreclosure sale on January 2, 2024, did Plaintiff cure her delinquency on the Loan. (Id. at ¶ 16.)

Upon Plaintiff's default, Defendant mailed to Plaintiff notice of intent ("Notice of Intent") to foreclose required under Paragraph 22 of the security deed. (Id. at ¶¶ 7, 9.) The Notice of Intent (1) notified Plaintiff of her default on the Loan and provided the amount required to cure the delinquency as of the date of the letter, (2) advised Plaintiff that

AO 72A
(Rev. 8/82)

"[f]ailure to cure the delinquency within 30 days of the date of [the Notice of Intent] may result in acceleration of the sums secured by the Deed of Trust or Mortgage, and sale of the [P]roperty," and (3) notified Plaintiff of her "right to reinstate the [L]oan after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense [Plaintiff] may have to acceleration and sale." (Id. at ¶ 8.) Defendant mailed the Notice of Intent via first class regular mail and first class classified mail, return request requested, on July 7, 2022, to both the Property address and Plaintiff's mailing address. (Id. at ¶ 9.) Plaintiff signed for the certified mail Notices of Intent on July 14, 2022, and July 23, 2022, respectively. (Id. at ¶ 10.)

Plaintiff submitted a new loss mitigation application, which was initially incomplete, to Defendant on September 30, 2022. (Id. at ¶¶ 11-12.) Defendant deemed her application complete on or about October 20, 2022. (Id. at ¶ 12.) After review of the application, Defendant determined Plaintiff was eligible for a forbearance plan, under which the first payment would be due December 1, 2022. (Id. at ¶ 13.) Defendant offered Plaintiff the forbearance plan, but when Plaintiff failed to accept or otherwise perform under the forbearance plan, Defendant cancelled the plan. (Id. at ¶¶ 13-14.) Defendant mailed notice of the forbearance plan cancellation to Plaintiff on or about January 25, 2023. (Id. at ¶ 15.)

AO 72A
(Rev. 8/82)

Plaintiff submitted three additional loss mitigation applications to Defendant between February 1, 2023, and November 17, 2023. (Id. at ¶ 17.) Defendant evaluated the first, submitted in February 2023, and concluded and informed Plaintiff that she was eligible only for home liquidation options. (Id. at ¶ 19.) Plaintiff submitted her most recent loss mitigation application on November 17, 2023, which Defendant reviewed and deemed incomplete on November 20, 2023. (Id. at ¶¶ 20-21.) Plaintiff did not complete her application, and Defendant cancelled its review of it on December 28, 2023. (Id. at ¶ 22.)

Meanwhile, on November 27, 2023, Defendant, through its foreclosure counsel, mailed the pre-foreclosure notice required by O.C.G.A. § 44-14-162.2 to Plaintiff. (Id. at ¶ 23.) The notice informed Plaintiff that the Property was scheduled to be sold under power of sale on January 2, 2024, and was mailed first class mail and certified mail, return receipt requested, to both the Property address and Plaintiff's mailing address. (Id. at ¶ 24.) Enclosed with the notice was a copy of the notice of sale submitted to the legal organ of Coffee County, Georgia (*The Douglas Enterprise*) for publication. (Id. at ¶ 25.) The certified mailings for the pre-foreclosure notice were received and signed for by Plaintiff on December 1 and 5, 2023, and the notice of sale was published in *The Douglas Enterprise* on December 7, 14, 21, and 28, 2023. (Id. at ¶¶ 26-27.)

The Property was sold under the power of sale on January 2, 2024, and Defendant was the highest bidder at the foreclosure sale. (Id. at ¶ 28.) At the time of the foreclosure

7

sale, the Loan was in default and due for the monthly installment payment due on June 1, 2022, and all subsequent payments. (Id. at ¶ 29.) Plaintiff did not send Defendant a pre-suit notice of grievance or complaint explaining why she believes the foreclosure was wrongful or provide Defendant an opportunity to cure any alleged issues associated with the foreclosure sale prior to filing the Complaint in this case. (Id. at ¶ 30.)

## B. The Complaint

Plaintiff filed her Complaint (A.P. ECF No. 1) (the "Complaint") in this adversary proceeding on August 19, 2024. Plaintiff alleges that starting in November 2023, she was involved in a loss mitigation process with Defendant, her mortgage servicer, and applied for a loan modification to prevent foreclosure of the Property.

> After the initial application and forms, Plaintiff sent in a total of three mortgage assistance forms to help with her mortgage to Defendant. She states she kept getting letters that the application was not completed. She was getting frustrated because she kept sending in the paperwork and documents requested, but the letters stated that they were not complete. Plaintiff states that she would call to inquire what was missing and then resend. She sent an email on January 8, 2024 regarding this and was never notified of any foreclosure of the property . . .

> Plaintiff assumed that she would be granted a loan modification and was under the impression that Defendant had received and was processing the documents that were requested of her. She was emailing back and forth with Defendant regarding this and at no time did they inform her that she was in jeopardy of foreclosure and would not be granted the loan modification.

AO 72A
(Rev. 8/82)

(Id. at ¶¶ 11-12.) Despite these loan modification efforts, Plaintiff alleges Defendant wrongfully foreclosed on the Property on January 2, 2024, and the Property was sold "to the lender." (Id. at ¶ 13.)

Plaintiff appears to state two causes of action in her Complaint: wrongful foreclosure and punitive damages.[4] In her claim for wrongful foreclosure, she appears to[5] allege that Defendant wrongfully foreclosed on the Property by acting in violation of 12 C.F.R. § 1024.41(c)(3)(i)(D)(1)[6], which provides that after a servicer has received a complete loss mitigation application from a borrower, the borrower

is entitled to certain foreclosure protections because the servicer has received the complete application, and, as applicable, either:

(1) If the servicer has not made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, that the servicer cannot make the first notice or filing required to commence or initiate the foreclosure process under applicable law before evaluating the borrower's complete application; or
(2) If the servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, that the servicer has begun the foreclosure process, and that the servicer cannot conduct a foreclosure sale before evaluating the borrower's complete application[.]

12 C.F.R. § 1024.41(c)(3)(i)(D)(1)-(2); (A.P. ECF No. 1 at ¶ 18.) Further, Plaintiff alleges that "a loan modification application received before foreclosure prohibits a servicer from any

---

[4] Although Plaintiff labels only the "First Cause of Action"—wrongful foreclosure—Plaintiff also seeks an award of punitive damages.

[5] The Complaint is not clear on what is being alleged.

[6] In the Complaint, Plaintiff improperly cites "Code of Federal Regulations § 1024.41 (D) (1)." The Court has determined that Plaintiff means 12 C.F.R. § 1024.41(c)(3)(i)(D)(1).

AO 72A
(Rev. 8/82)

judicial or non-judicial foreclosure process unless the servicer sent the borrower a notice stating that the borrower was not eligible for any loss mitigation option" under 12 C.F.R. § 1024.41(f)(2). (A.P. ECF No. 1 at ¶¶ 19.) Plaintiff apparently alleges as additional bases for wrongful foreclosure that Defendant did not comply with the pre-foreclosure notice requirements of O.C.G.A. § 44-14-162.2 and Paragraph 22 of the security deed for the Property. (Id. at ¶¶ 14-15.)

Plaintiff states she is seeking actual damages "for having to file a chapter 13 bankruptcy petition," because she believed "it was the only option she had to save[] [her] home." (Id. at ¶ 26.) She also requests that the Court set aside the foreclosure and restore her ownership of the Property. (Id. at ¶ 27.) Finally, Plaintiff alleges she is entitled to punitive damages in the amount of $1,000,000.00 because Defendant's actions or omissions constitute wanton, callous, and conscious disregard for Plaintiff's rights. (Id. at ¶ 30.)

## THE SUMMARY JUDGMENT MOTION

After the close of discovery and within the time set by the Court to file dispositive motions, Defendant filed its Motion. Plaintiff filed its timely Response and Defendant a timely Reply.

### A. Defendant's Summary Judgment Motion

AO 72A
(Rev. 8/82)

10

Defendant moves for summary judgment arguing that Plaintiff's claim for wrongful foreclosure is based on allegations unsupported by the record evidence or law. Defendant characterizes Plaintiff's wrongful foreclosure claim as having three factual bases: first, Plaintiff alleges that Defendant failed to provide the pre-foreclosure notice required by O.C.G.A. § 44-14-162.2 prior to the foreclosure sale of the Property; second, Plaintiff alleges that Defendant failed to provide the notice of default required under Plaintiff's security deed before accelerating the loan and foreclosing on the Property; and third, Plaintiff alleges that Defendant violated the Real Estate Settlement Procedures Act of 1974's ("RESPA") prohibition of "dual-tracking" when it foreclosed on the Property while Plaintiff was pursuing loss mitigation options. (A.P. ECF No. 56 at 6-7.)

Defendant first asserts that Plaintiff's wrongful foreclosure claim fails because she cannot prove an essential element of wrongful foreclosure under Georgia law: causation. For a wrongful foreclosure claim to succeed, a plaintiff must show that the defendant somehow caused the plaintiff's default that led to the foreclosure. Defendant states that Plaintiff "defaulted on her *fifth* mortgage loan modification by missing the *second* payment under the modification (after having already been 30 months delinquent on her previous *fourth* modification)," and there is no record evidence that Defendant caused Plaintiff's non-payment default. (Id. at 8 (emphasis in original).) Furthermore, Plaintiff also cannot demonstrate that an alleged lack of pre-foreclosure notice caused her alleged injury. (Id.)

AO 72A
(Rev. 8/82)

Defendant next refutes Plaintiff's allegations that Defendant breached a duty owed to Plaintiff—another essential element of wrongful foreclosure under Georgia law. First, it argues that it fully complied with O.C.G.A. § 44-14-162.2, which sets forth requirements for a pre-foreclosure notice, prior to foreclosing on the Property. Specifically, contrary to Plaintiff's allegations, Defendant asserts that the evidence shows that the pre-foreclosure notice was sent 36 days prior to the foreclosure sale by certified mail, return receipt requested, and that Plaintiff received the notice, even though receipt is not required by law. (Id. at 10.)

Second, Defendant argues that it complied with Paragraph 22 of the security deed for the Property because Defendant's notice of intent to foreclose, sent to Plaintiff on July 7, 2022, included all required information and was timely. Even more, Defendant shows that Plaintiff specifically admitted that Defendant's notice of intent to foreclose complied with Paragraph 22 and that she signed the certified return receipts for the notices of intent sent to two separate addresses for her. Additionally, Defendant states that Plaintiff did not specify in her Complaint how Defendant did not comply with Paragraph 22. (Id. at 12-13.)

Finally, Defendant argues that Plaintiff's "attempt to establish a wrongful foreclosure" by alleging Defendant engaged in dual-tracking fails. Defendant asserts Georgia law does not recognize dual-tracking as a basis for wrongful foreclosure, and even if it did, Defendant did not dual-track Plaintiff. (Id. at 14.)

AO 72A
(Rev. 8/82)

Defendant further asserts that even if Plaintiff's claim was brought under RESPA instead of wrongful foreclosure, it did not violate RESPA or Regulation X (which is the implementing regulation of RESPA). In her Complaint, Plaintiff cites certain Regulation X provisions that Defendant allegedly violated. Defendant states that such a claim "fails because [Defendant] was excused from complying with the Regulation X in response to Plaintiff's November 2023 loss mitigation application because [Defendant] had already fully complied with Regulation X when reviewing Plaintiff's September 2022 loss mitigation application and the February 2023 loss mitigation application[.]" (Id. at 14.)

According to Defendant, a servicer is excused from compliance with the loss mitigation requirements of 12 C.F.R. § 1024.41 relied upon by Plaintiff if the "servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application." 12 C.F.R. § 1024.41(i). Defendant argues this applies here because Plaintiff "remained in a state of default on the Loan after [Defendant] offered her the Forbearance Plan in October 2022, never once curing or reinstating her default." (A.P. ECF No. 56 at 16.) In sum, Defendant posits that it had no duty to comply with Regulation X in connection with any loss mitigation applications submitted by Plaintiff subsequent to October 2022 (although it did so by reviewing her

AO 72A
(Rev. 8/82)

subsequent applications). (Id.) Accordingly, Defendant denies that there is any evidence showing that it violated Regulation X in its relevant dealings in Plaintiff.

Defendant also specifically argues that even if 12 C.F.R. § 1024.41(i) did not apply, it did not violate 12 C.F.R. § 1024.41(f), which "prohibits a servicer from noticing the foreclosure sale if the borrower submits a complete modification application before the servicer provides the first notice that foreclosure proceedings are commencing." Defendant argues that the evidence shows that Plaintiff did not have a complete loan modification application pending prior to November 27, 2025, the date Defendant first sent the statutory notice of foreclosure to Plaintiff, or December 7, 2025, the date that notice of the foreclosure sale was first published in the local newspaper, so 12 C.F.R. § 1024.41(f) is inapplicable.[7] (Id. at 18.)

Finally, Defendant argues that it is entitled to summary judgment on Plaintiff's claim for punitive damages because Plaintiff has not made sufficient allegations to establish or prove by clear and convincing evidence that she is entitled to punitive damages in this case. (Id. at 18-20.)

After refuting Plaintiff's allegations, Defendant separately asserts that it is entitled to summary judgment on all of Plaintiff's claims on yet another ground: Plaintiff failed to

---

[7] Defendant also argues that it did not violate 12 C.F.R. § 1024.41(d). (Id. at 16.) Because Plaintiff does not allege Defendant violated 12 C.F.R. § 1024.41(d), the Court need not discuss Defendant's arguments on this point.

AO 72A
(Rev. 8/82)

comply with pre-suit conditions under the security deed. Paragraph 20 of the security deed provides:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provisions of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

Defendant states that the evidence shows that Plaintiff gave Defendant no notice of her grievance prior to filing this adversary proceeding and urges the Court to follow other courts in the Eleventh Circuit that have granted summary judgment against borrowers who have failed to comply with similar pre-suit notice requirements. (Id. at 20-21.)

In support of its Motion, Defendant filed its Statement of Undisputed Material Facts (A.P. ECF No. 63) as required by Local Rule 56.1.

### B.    Plaintiff's Response

Plaintiff timely responded in opposition to the Motion. However, Plaintiff failed to respond to Defendant's Statement of Undisputed Facts; failed to provide her own Statement of Undisputed Material Facts; and ***failed to cite any record evidence whatsoever*** in her Response in opposition the Motion.

AO 72A
(Rev. 8/82)

In her Response, Plaintiff states she filed her Complaint for wrongful foreclosure "because [she] was under the assumption that she was going to be approved for a loan modification" and was "taken by surprise" when she learned Defendant had foreclosed on her home. (A.P. ECF No. 66 at 3-4.) Plaintiff states, without evidence, Defendant breached a legal duty to Plaintiff by "not following through with her loan modification agreement and by not providing notice to the Plaintiff that her loan modification was rejected and that the next step was acceleration to foreclosure proceedings against her home." (Id. at 4.) Plaintiff largely repeats her allegations in the Complaint (Defendant breached O.C.G.A. § 44-14-162.2(a), Paragraph 22 of the security deed, and certain provisions of RESPA/Regulation X), although with no evidence to support them. (Id. at 4-9.)

While Plaintiff provides no evidence to demonstrate a genuine issue of material fact, she does make a legal argument against Defendant. Plaintiff rejects Defendant's argument that it was excused from further, repeated compliance with 12 C.F.R. § 1024.41 after it fully complied with it in response to Defendant's September 2022 loan modification application and Defendant remained in default.[8] Instead, Plaintiff argues that "[a] servicer must

---

[8] Plaintiff also cites provisions regarding awards of damages for violations of RESPA in her Response. (Id. at 7-8.) Plaintiff did not state a claim for damages under RESPA in her Complaint. The claims presented in her Complaint were for wrongful foreclosure and punitive damages under Georgia law. To the extent she is attempting to state an independent claim under RESPA for the first time in her Response, it will not be considered. Gilmour v. Gates, McDonald, & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (the correct way to assert a claim after a complaint is filed is to move for leave to file an amended complaint).

AO 72A
(Rev. 8/82)

comply with loss mitigation regulations for a subsequent application, even after a prior approval or denial," relying on Dionne v. Fed. Nat'l Mortg. Ass'n, 110 F. Supp. 3d 338 (D.N.H. 2015). (Id. at 7.) Plaintiff does not address the effect a borrower's uninterrupted default may have on a servicer's obligations under Regulation X pursuant to 12 C.F.R. § 1024.41(i), relied upon by Defendant.

Plaintiff also argues, for the first time and without evidence, that Defendant failed "to exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application," in violation of 12 C.F.R. § 1024.41(b)(1) and (c)(4), instead ignoring Plaintiff when she reached out several times regarding her incomplete application. (Id. at 8.) Plaintiff contends, without evidence, that "she never received the notice that she was not eligible [for a loan modification] and there was missing information and sincerely believed that she was awaiting approval." (Id.)

Finally, Plaintiff summarily states that she can show a causal link between Defendant's alleged breaches of certain notice requirements and her injury because "the lack of providing notices of the approval or disapproval of the loan modification and lack of notice of foreclosure directly caused her damages by essentially forcing her into filing a chapter 13 bankruptcy." (Id. at 9.) She does not address Defendant's record evidence that she was in default by failing to make her monthly payment for June 1, 2022, and all subsequent payments and that her default triggered foreclosure activity against her.

AO 72A
(Rev. 8/82)

17

## C. Defendant's Reply

In its Reply, Defendant repeats and directs the Court to its uncontroverted evidence that it is not liable for wrongful foreclosure or punitive damages. Because Plaintiff failed to provide any support for its contentions that Defendant did not provide Plaintiff sufficient pre-foreclosure notice, and such contentions are contradicted by the record evidence before the Court, Defendant argues that Plaintiff has not created any genuine issue of material fact on this issue. (A.P. ECF No. 67 at 5.) Defendant also argues, as to Plaintiff's allegations that Defendant did not comply with various provisions of 12 C.F.R. § 1024.41, that Plaintiff again ignores the effect of 12 C.F.R. § 1024.41(i), which excuses servicers from further compliance with 12 C.F.R. § 1024.41 where a borrower has been delinquent at all times since the consideration of a prior complete loss mitigation application. (Id. at 5-6.)

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

## A. Judicial Notice

As a preliminary matter, the Court will address Defendant's request that the Court take judicial notice of (1) certain certified mailing receipts/proof of delivery produced by

AO 72A
(Rev. 8/82)

the U.S. Postal Service and submitted by Defendant and (2) a copy of the deed under power for the Property recorded in the Superior Court of Coffee County, Georgia, on January 16, 2024, and submitted by Defendant. A court may take judicial notice of a fact that is not subject to reasonable dispute because it is generally known within its territorial jurisdiction or can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); Fed. R. Bankr. P. 9017.

After consideration, the Court will take judicial notice of fact of the above-named documents. The Court finds that these documents are issued or maintained by the U.S. Postal Service or the Superior Court of Coffee County, which are sources whose accuracy cannot reasonably be questioned. The Court further finds that there appears to be no dispute over the accuracy of the fact that these documents were issued or filed. Moreover, Plaintiff has not objected to Defendant's request for the Court to take judicial notice.

### B. Summary Judgment Standard

Summary judgment is appropriate only where the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and make any factual inferences from the evidence in the light most favorable to the non-movant when considering a motion for summary judgment. Alvarez v. Royal Atl. Developers, Inc., 610

AO 72A
(Rev. 8/82)

19

F.3d 1253, 1263-64 (11th Cir. 2010). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007); see also Chadwick v. Bank of America, N.A., 616 F. App'x 944, 950 n.3 (11th Cir. 2015) (finding "[mortgagor's] vague, self-serving testimony that he spoke with an unnamed [mortgage company's] representative on some unspecified date, and the representative told him not to send [mortgage company] any money, is insufficient to establish a genuine issue of fact as to whether [mortgage company] misrepresented its intentions to [mortgagor]").

"Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. For factual issues to be considered genuine, they must have a real basis in the record." Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996); see also Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) ("An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party."). "[M]ere conclusions and unsupported

AO 72A
(Rev. 8/82)

factual allegations are legally insufficient to defeat a summary judgment motion." Ellis v. England, 432 F.3d 1321, 1326 (11th Cir. 2005). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC, 702 F.3d 1312, 1316 (11th Cir. 2012) (quotations omitted).

The movant bears the initial burden to demonstrate to the court the basis for its motion for summary judgment and identify those portions of the pleadings which it believes show an absence of any genuine issue of material fact. Shiver v. Chertoff, 549 F.3d 1342, 1343 (11th Cir. 2008). The movant meets this burden by showing that the non-moving party has failed to present appropriate evidence in support of an element of the case on which the non-moving party bears the burden of proof at trial. Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). The burden then shifts to the non-movant to establish, by going beyond the pleadings, that a genuine issue of material fact exists. Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (holding that, once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file" demonstrate that there is a genuine dispute of material fact) (quotations omitted); United States v. Travelers Cas. & Surety Co. of Am., CV 118-210, 2021 WL 3824834, at *2 (S.D. Ga. Aug. 26, 2021) ("The non-movant cannot carry its burden by

AO 72A
(Rev. 8/82)

relying on the pleadings or by repeating conclusory allegations contained in the complaint

. . . the non-movant must respond with affidavits or as otherwise provided by Federal Rule

of Civil Procedure 56."). "A mere scintilla of evidence is insufficient; the non-moving party

must produce substantial evidence in order to defeat a motion for summary judgment."

Garczynski v. Bradshaw, 573 F.3d 1158, 1165 (11th Cir. 2009) (quotations omitted).

**C. Defendant Has Satisfied its Burden Under Rule 56, But Plaintiff Has Not Identified a Genuine Factual Dispute in Response.**

Defendant has submitted its Statement of Undisputed Material Facts and properly

identified portions of pleadings, depositions, and discovery-related materials that

demonstrate an absence of dispute as to a genuine issue of material fact. Fed. R. Civ. P.

56(b); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Therefore, the burden shifts to

Plaintiff to "set forth specific facts showing that there is a genuine issue for trial." Fed. R.

Civ. P. 56(e).

Plaintiff has failed to carry this burden. As previously stated, Plaintiff did not

respond to Defendant's Statement of Undisputed Facts; did not submit her own Statement

of Undisputed Material Facts; and *failed to cite any record evidence whatsoever* in her

Response in opposition to the Motion.

AO 72A
(Rev. 8/82)

For the reasons that follow, Defendant is entitled to summary judgment on both claims of Plaintiff. It has shown that no genuine dispute of material fact exists and that Plaintiff cannot prove essential elements of her claims. The Court has also independently reviewed Defendant's material facts and concludes that they are supported by the evidentiary record. Reese v. Herbert, 527 F.3d 1253, 1269 (11th Cir. 2008) (noting that a district court considering a motion for summary judgment must ensure that the material facts are supported by evidentiary materials, even if they are admitted or unopposed).

### D. Wrongful Foreclosure

Under Georgia law, a debtor bringing a claim for wrongful foreclosure must show (1) a legal duty owed to it by the foreclosing party; (2) breach of that duty; (3) a causal connection between the breach and the injury sustained; and (4) damages. See Heritage Creek Dev. Corp. v. Colonial Bank, 268 Ga. App. 369, 371 (2004).

Plaintiff has not shown that Defendant breached a duty it owed to Plaintiff or a causal connection between the breach and the injury sustained. Because the uncontroverted evidence in the record shows that Defendant did not breach a duty owed to Plaintiff and that there was no causal connection between the alleged breach and Plaintiff's alleged injury, Defendant is entitled to summary judgment on Plaintiff's wrongful foreclosure claim.

AO 72A
(Rev. 8/82)

### i. Breach of a Duty

Plaintiff alleges that Defendant breached a duty to Plaintiff by failing to comply with three statutory, regulatory, or contractual provisions: O.C.G.A. § 44-14-162.2; Paragraph 22 of the security deed for the Property; and 12 C.F.R. § 1024.41(c)(3)(i)(D)(1) and 12 C.F.R. § 1024.41(f)(2), two related provisions of Regulation X, the implementing regulation for RESPA. The evidence shows otherwise.

#### a. The secured creditor properly provided Plaintiff the pre-foreclosure notice required by O.C.G.A. § 44-14-162.2 through its foreclosure counsel.

Although Plaintiff alleges in her Complaint that, under O.C.G.A. § 44-14-162.2, "Defendant had a duty to notify Plaintiff within 30 days about foreclosure proceedings and no notice was sent via registered/ overnight mail nor received by the Plaintiff about the upcoming foreclosure," such allegation is not supported by the uncontroverted evidence in the record. (A.P. ECF No. 1 at ¶ 14.)

A debtor must be given notice by the secured creditor of "initiation of proceedings to exercise a power of sale" at least 30 days prior to the date of the proposed foreclosure. O.C.G.A. § 44-14-162.2(a). Notice is given "on the official postmark day or day on which [the notice] is received for delivery by a commercial delivery firm." Id.

AO 72A
(Rev. 8/82)

Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured creditor.

Id.

Defendant is the servicer of the Loan, not the secured creditor, so O.C.G.A. § 44-14-162.2(a) is not technically applicable to Defendant, although a servicer may provide the pre-foreclosure notice if directed to by the secured creditor. LaCosta v. McCalla Raymer, LLC, No. 1:10–CV–1171–RWS, 2011 WL 166902, at *4 (N.D. Ga. Jan. 18, 2011) ("The goal of Section 162 is to give the debtor notice of the foreclosure sale. Whether that notice is provided by the secured creditor directly, or by its agent, is of no consequence."). In any event, the evidence shows that notice of the foreclosure was mailed to Plaintiff at the Property address and at her separate mailing address on November 27, 2023, via regular mail and certified mail, return receipt requested. (A.P. ECF No. 55-1 at 5, 295-303; A.P. ECF No. 55-3.) The evidence further shows that two copies of the notice were delivered and signed for by Plaintiff on December 1, 2023, and December 5, 2023, respectively. (Id.; A.P. ECF No. 55-4.) Plaintiff also specifically admitted in response to discovery requests that the notice complied with the notice requirements of O.C.G.A. § 44-14-162.2(a). (A.P. ECF No. 55-3 at 6, 8-17, 21.) Contrary to Plaintiff's allegations, the notice was not required to be

AO 72A
(Rev. 8/82)

mailed by "registered/overnight mail," and was received by Plaintiff. The notice was also mailed more than 30 days prior to the foreclosure sale date of January 2, 2024. Based on these uncontroverted facts, Plaintiff was provided notice that complied with O.C.G.A. § 44-14-162.2 in connection with the foreclosure of the Property.

### b. Defendant properly provided the notice of default required under Plaintiff's security deed before accelerating the loan and foreclosing on the Property.

Plaintiff's allegation that Defendant violated Paragraph 22 of the security deed is also unsupported. Paragraph 22 sets forth specific notice requirements the lender must give Plaintiff prior to acceleration of the debt following Plaintiff's breach of the security deed.

Plaintiff fails to even specify, in her Complaint or in her Response to the Motion, *how* Defendant violated Paragraph 22. Additionally, Plaintiff does not explain how Paragraph 22 applies to Defendant, a servicer that is not party to the security deed. Instead, in her Response, she asserts Defendant violated 12 C.F.R. § 1024.41(b)(2)(i) by failing to notify Plaintiff that her loan modification application submitted in November 2023 was denied. (A.P. ECF No. 66 at 6-7.) However, Plaintiff offers no evidence in support of this assertion, so the Court need not explore it.

AO 72A
(Rev. 8/82)

In any event, Defendant has shown that it complied with Paragraph 22 by sending a notice of intent to foreclose on the Property to Plaintiff on July 7, 2022, and such notice contained all information required by Paragraph 22 and was delivered and signed for at Plaintiff's address. (A.P. ECF No. 55 at ¶¶ 7-9; A.P. ECF No. 55-1 at 4; A.P. ECF No. 55-2 at 6, 9-36, 46.) Defendant has also shown that Plaintiff admitted that Defendant mailed the notice to Plaintiff and that the notice complied with Paragraph 22. (A.P. ECF No. 55-2 at 6, 9-33, 46.) Based on these uncontroverted facts, Defendant complied with Paragraph 22 of the security deed in connection with the foreclosure of the Property.

### c. Defendant did not violate 12 C.F.R. § 1024.41(c)(3)(i)(D)(1) or 12 C.F.R. § 1024.41(f)(2) when it foreclosed on the Property while Plaintiff was pursuing loss mitigation options.

Plaintiff's final allegation of a breach of duty by Defendant is that Defendant proceeded with the foreclosure of the Property while a loss mitigation application was pending in violation of 12 C.F.R. § 1024.41(c)(3)(i)(D)(1) and 12 C.F.R. § 1024.41(f)(2), both provisions of Regulation X, which implements RESPA.

Under 12 C.F.R. § 1024.41(c)(3)(i)(D)(1), upon receipt of a complete loss mitigation application, a servicer must provide a borrower with written notice that the borrower is entitled to certain protections, including that, if the servicer "has not made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, []

the servicer cannot make the first notice or filing required to commence or initiate the foreclosure process under applicable law before evaluating the borrower's complete application[.]" 12 C.F.R. § 1024.41(c)(3)(i)(D)(1).

12 C.F.R. § 1024.41(f)(2) provides:

**Application received before foreclosure referral.** If a borrower submits a complete loss mitigation application during the pre-foreclosure review period set forth in paragraph (f)(1) of this section or before a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process, a servicer shall not make the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless:

    (i)    The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

    (ii)    The borrower rejects all loss mitigation options offered by the servicer; or

    (iii)    The borrower fails to perform under an agreement on a loss mitigation option.

It is unclear whether Georgia law recognizes violations of RESPA/Regulation X as bases for a wrongful foreclosure claim. See 12 C.F.R. § 1024.41(a) ("A borrower may enforce the provisions of [Section 1024.41] pursuant to section 6(f) of RESPA (12 U.S.C. §

2605(f)).");[9] Chadwick v. Bank of America, N.A., 616 F. App'x 944, 950 (11th Cir. 2015) ("Georgia law . . . does not support a cause-of-action for wrongful foreclosure simply because a bank pursues modification and foreclosure at the same time."); Moore v. McCalla Raymer, LLC, 916 F. Supp. 2d 1332, 1343 (N.D. Ga. 2013) ("[S]eeking a loan modification does not give Plaintiff a cause of action for wrongful foreclosure."). However, the Court declines to decide that issue here, as the evidence shows that Defendant had no duty to comply with the regulations cited by Plaintiff.

Defendant was relieved from a duty to comply with 12 C.F.R. § 1024.41(c)(3)(i)(D)(1) and 12 C.F.R. § 1024.41(f)(2) by 12 C.F.R. § 1024.41(i), which provides:

> **Duplicative requests.** A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application.

Defendant has shown it was excused from complying with Regulation X in response Plaintiff's latest set of loan modification applications (submitted during 2023)—including the November 2023 application that is the subject of Plaintiff's Complaint—because it had previously complied with it in response to Plaintiff's September 2022 loan modification application. In response to the September 2022 application, Defendant approved Plaintiff

---

[9] Plaintiff does not bring a claim under RESPA, but even if she had, it would fail for the reasons discussed herein. See 12 C.F.R. § 1024.41(i).

29

for a forbearance plan, which Plaintiff did not accept. In light of its previous compliance with the requirements of the regulation and because the evidence shows that Plaintiff *remained delinquent at all times since submitting her September 2022 application*, Defendant was under no duty to repeatedly comply with Regulation X when Plaintiff submitted various subsequent applications throughout 2023.[10]

Furthermore, the only application Plaintiff relies upon as a basis for her claims is the application she submitted in November 2023. The uncontroverted evidence shows that the November 17, 2023, application was incomplete; Defendant notified Plaintiff of the incompleteness of the application and requested additional information on November 20, 2023; and, upon Plaintiff's failure to provide the requested information, Defendant cancelled the review of her November 2023 application on December 28, 2023. (A.P. ECF No. 55-1 at 5, 262-289.) The fact that Plaintiff's November 2023 application—the only application that Plaintiff relies upon to support her claims—was incomplete is an additional reason that 12 C.F.R. § 1024.41(c)(3)(i)(D)(1) and 12 C.F.R. § 1024.41(f)(2) do not apply to Defendant.

### ii. Causal Connection

---

[10] Although it was not required to do so, the evidence shows that Defendant did review Plaintiff's February 2023 application and determined that Plaintiff was eligible only for home liquidation options. (A.P. ECF No. 55-1 at 5.) Plaintiff's subsequent loss mitigation applications, including her November 2023 application, were each denied due to Plaintiff's failure to submit complete loan modification packages. (Id.) Defendant sent notice of its response to each of these three applications to Plaintiff.

AO 72A
(Rev. 8/82)

30

Plaintiff cannot prove another essential element of her wrongful foreclosure claim: a causal connection between Defendant's alleged breach of a duty and Plaintiff's alleged injury. Heritage Creek Dev. Corp., 268 Ga. App. at 371.

Plaintiff alleges in her Complaint that Defendant did not comply with several notice requirements under state and federal law prior to foreclosure, and that noncompliance "caused Plaintiff unnecessary trouble, expense, and the loss of her homestead." (A.P. ECF No. 1 at ¶ 26.) She also appears to allege that Defendant's conduct also caused her to file chapter 13 bankruptcy. (Id.)

As shown by Defendant, there is no evidence in the record that Defendant's alleged breach—related to notice of the foreclosure or consideration of her loan modification applications while also pursuing foreclosure—caused Plaintiff's alleged damages. In other words, there is no evidence that the foreclosure would not have occurred had Plaintiff been given all the notice she alleges she was not given.[11] Instead, the uncontroverted evidence shows that Plaintiff's long-term and uncured default that started June 1, 2022, was the cause of the January 2, 2024, foreclosure. See Miles v. Nationstar Mortg., LLC, Carr v. U.S. Bank N.A. as Trustee for TBW Mortg. Backed-Trust Series 2006-6 Mortg. Pass Through Certificates Series 2006-6, 1:11-CV-00821-SCJ-GGB, 2012 WL 13006058, at *11 (N.D. Ga.

---

[11] And, as the Court concluded, the evidence shows that Plaintiff *was* given the required notice of the foreclosure.

AO 72A
(Rev. 8/82)

Apr. 2, 2012) (summary judgment on wrongful foreclosure claim granted where plaintiff failed to produce any evidence of a "causal connection between the alleged defective notice and the injury he sustained as a result"; foreclosure was actually caused by plaintiff's failure to make payments on the loan). Plaintiff offers no evidence or argument to refute this fact. For this reason and the others discussed herein, Defendant is entitled to summary judgment on Plaintiff's claim for wrongful foreclosure.

### E. Punitive Damages

Finally, Defendant is entitled to summary judgment on Plaintiff's punitive damages claim. There are no facts in the record that would support a claim for punitive damages. Furthermore, a claim for punitive damages depends upon the success of an underlying claim. Here, because the Court has found Plaintiff's wrongful foreclosure claim fails, there is no successful underlying claim that could support a punitive damages claim. Accordingly, Defendant is entitled to summary judgment on Plaintiff's claim for punitive damages.

### F. Plaintiff's Failure to Notify Defendant of Alleged Breach Prior to Suit

Defendant's final argument that it is entitled to summary judgment is based on Plaintiff's failure to provide it with notice of Defendant's alleged breach under the security

AO 72A
(Rev. 8/82)

deed prior to initiating this adversary proceeding as required by Paragraph 20 of the security deed. Because the Court has concluded that Defendant is entitled to summary judgment on Plaintiff's claims for the reasons provided above, the Court declines to reach this issue.

**ORDER**

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (A.P. ECF No. 56) is **GRANTED**. The Court will enter a separate final judgment consistent with this Order.

**SO ORDERED**, this 30th day of March, 2026.

Michele J. Kim
Chief Judge
United States Bankruptcy Court
Southern District of Georgia

AO 72A
(Rev. 8/82)